| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO.**<br>1437 Bannock Street, Denver, CO 80202<br>Telephone: (720) 865-8301 | DATE FILED: February 20, 2018 12:19 PM<br>FILING ID: 9FA4EDF74479B<br>CASE NUMBER: 2018CV30624 |
| **SECURE-ALL COMPANY, INC., A Colorado corporation,**<br><br>Plaintiff,<br><br>v.<br><br>**THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, a Connecticut corporation,**<br><br>Defendant. | ^COURT USE ONLY^ |
| *Attorneys for Plaintiffs*<br>David J. Furtado, No. 28002<br>Nathanael Archuleta, No. 50075<br>John Joyner, No. 50005<br>Furtado Law PC<br>3773 Cherry Creek North Drive, Ste. 575<br>Denver, CO 80209<br>Telephone: (303) 755-2929<br>Facsimile: (303) 309-6463<br>E-Mail: dfurtado@furtadolaw.com<br>   nathanael@furtadolaw.com<br>   john@furtadolaw.com | Case No<br><br>Division: |
| **COMPLAINT AND JURY DEMAND** | |

COMES NOW, Plaintiff, Secure-all Company, Inc., by and through its attorneys, Furtado Law PC, for its Complaint against the above-named Defendant the Travelers Indemnity Company of Connecticut, and states as follows:

### I.     PARTIES, JURISDICTION, AND VENUE

1. Secure-all Company, Inc., ("Plaintiff") is a Colorado corporation with its principal place of business at 4300 West 38th Avenue, Denver, CO 80212, and is authorized to do business in Colorado.

2. Upon information and belief, the Travelers Indemnity Company of Connecticut ("Defendant") is a foreign corporation with its principal place of business located in Connecticut and has members in Colorado.

**Exhibit A1**

3. This Court has jurisdiction over the subject matter of this action and the parties hereto.

4. Venue is proper in this Court pursuant to C.R.C.P. 98(c)(1).

## II.    GENERAL ALLEGATIONS

5. Plaintiff sought and obtained an insurance policy, Policy No. 680-6C330698-17-42 (hereinafter "the Policy"), from Defendant for commercial property located at 4300 West 38th Avenue, Denver, CO 80212 (hereinafter the "Property").

6. On or about May 8, 2017, a hail and windstorm hit Plaintiff's Property causing property damage.

7. On or about June 2, 2017, Plaintiff reported the loss to Defendant and Defendant issued Plaintiff claims number FAE1990 and assigned Larry Peluso as its claims representative on the claim.

8. On or about June 2, 2017, Defendant inspected Plaintiff's property and issued its first estimate with a replacement cost value of $26,100.28 (actual cash value of $13,883.35).

9. On or about June 21, 2017, Plaintiff hired K1 Roofing and Restoration, LLC (hereinafter "K1") as its contractor for repairs related to the date of loss.

10. Upon information and belief, shortly after, K1 contacted Defendant to discuss the loss.

11. On or about July 27, 2017, Defendant's adjuster Brandon Wise re-inspected the property and issued Defendant's second estimate with a replacement cost value of $32,744.54 (actual cash value of $16,916.08). Upon information and belief, after other items were removed, Defendant paid Plaintiff $16,516.08.

12. On or about September 22, 2017, Mark Rothbauer with K1 emailed Defendant that during construction, he noted the roof substrate which was made of lightweight gypsum concrete was separating and fractured from the metal decking below and would not provide a good bonding surface for the new roof system. He estimated that 30% of the roof was impacted. As such, Mr. Rothbauer noted that the cost of replacement of the roof would increase substantially. He also sent Defendant a new estimate to this effect with a replacement cost value of $77,114.97 and also included amounts for required insurance code upgrades and code references from the city.

13. Mr. Rothbauer further stated that he had to proceed with repairs including the increased cost due to the cracked gypsum fracturing to prevent further damage to the property from incoming storm.

**Exhibit A1**

14. On or about September 27, 2017, Defendant emailed Plaintiff that it would not be approving any other supplements on the claim until after one of its adjusters had a chance to inspect the property.

15. Upon information and belief, Mr. Rothbauer then completed the repairs in an effort to mitigate potential damages from an incoming storm.

16. On or about September 28, 2017, Mr. Rothbauer emailed Mr. Peluso code items received from the building inspector. Upon information and belief, these code references were given to Plaintiff during the pre-inspection process.

17. On or about October 20, 2017, Mr. Rothbauer sent Mr. Peluso an email with his final estimate of repairs including work done for separation of the concrete.

18. On or about November 7, 2017, Mr. Rothbauer drafted an estimate with a replacement cost value of $126,068.69 (including $38,372.81 in ordinance and law coverage items).

19. Included in this estimate, Mr. Rothbauer edited the Xactimate pricing for labor removal rate and gypsum concrete labor rate to account for problems associated with the increased cost of removal and replacement of the gypsum concrete.

20. On or about November 7, 2017, K1 also drafted its final invoice mirroring its estimate.

21. On or about November 8, 2017, Mr. Rothbauer sent his final invoice to Larry Peluso and asked for ordinance and law amounts as the items were incurred during roof replacement by code.

22. On or about December 19, 2017, Mr. Rothbauer resent Defendant his final invoice for incurred costs and asked for release of replacement cost value in the amount of $109,052.61 ($126,068.69 in final replacement cost value minus prior acv payment of $16,516.08 minus deductible of $500.00).

23. Upon information and belief, on or about December 19, 2017, Defendant's email system sent an automatic reply to Mr. Rothbauer that it received his information and it was being reviewed.

24. On or about January 2, 2018, Plaintiff's counsel sent its letter of representation to Defendant asking Defendant for its coverage decision on K1's increased cost of construction invoices and demanding a response from Defendant by January 16, 2018.

25. On or about January 2, 2018, Mr. Peluso then contacted Plaintiff's counsel by phone and said he saw no issue with Plaintiff's invoices and that he intended on approving K1's estimates shortly.

26. On or about January 5, 2018, Mr. Peluso sent Plaintiff's counsel Defendant's revised estimate with a replacement cost value of $95,359.22.

**Exhibit A1**

27. In defense of this estimate, Mr. Peluso stated that the scope varied but met R value insulation requirements for code. Mr. Peluso also stated that Defendant's revised estimate reflected what was fair and reasonable as K1's estimate was charging above industry pricing.

28. Upon information and belief, Defendant then paid Plaintiff the replacement cost value of its estimate.

29. Upon information and belief, Defendant's failure to properly adjust Plaintiff's increased cost of construction regarding removal of the gypsum concrete is unreasonable because K1's pricing was justified by the increased difficulty and time in removing the gypsum concrete.

30. Upon information and belief, Defendant's delay in making a timely coverage decision on K1's increased cost of construction related to the gypsum concrete is evidence of unreasonably delay as Defendant has not provided a reasonable basis for failing to make a coverage decision during this time. Defendant has provided no rationale for why it did not inspect Plaintiff's property after September 27, 2017 which would have expedited a decision on K1's increased cost of construction related to the gypsum concrete.

31. Although Plaintiff provided Defendant with the necessary documentation to recover covered benefits, Defendant has unreasonably delayed and denied Plaintiff's claim for benefits by failing to conduct a reasonable investigation of Plaintiff's claim and failing to timely pay recoverable depreciation when it was due and owing.

32. As a consequence of Defendant's conduct in unreasonably delaying and denying Plaintiff's claim for benefits due and owing under the Policy, Plaintiff and its agents have incurred and continue to incur damages.

### III.   FIRST CLAIM FOR RELIEF
(*Breach of Contract*)

33. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

34. The Policy creates a contract of insurance.

35. By its actions, as described above, Defendant breached the contract of insurance by not properly investigating Plaintiff's claim and paying benefits that were due and owing under the policy including ordinance and law items, recoverable depreciation and the increased cost of construction required to perform the necessary repairs to the property.

36. As a direct and proximate result of said breach, the Plaintiff is entitled to damages in an amount to be determined at trial.

**Exhibit A1**

## IV.     SECOND CLAIM FOR RELIEF

*(Violation of C.R.S. §10-3-1115 and Relief Pursuant to §10-3-1116)*

37. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

38. C.R.S. §10-3-1115 forbids an insurer from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of a first-party claimant.

39. Plaintiff is a first-party claimant under C.R.S. §10-3-1115.

40. Defendant has denied the Plaintiff's claim without a reasonable basis within the meaning of C.R.S. §10-3-1115.

41. C.R.S. §10-3-1116 provides that a first-party claimant whose claim has been unreasonably delayed by an insurer may bring an action in Colorado district court to recover reasonable attorneys' fees and court costs and two times the covered benefit.

42. Because of Defendant's actions, as described above, violate C.R.S. §10-3-1115, Plaintiff brings this claim to recover its reasonable attorneys' fees and court costs and two times the covered benefit, as allowed under C.R.S. §10-3-1116.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks that this Court enter judgment in its favor and against Defendant on its Claims for Relief as follows:

1. Damages for Defendant's breach of contract;

2. Two times the amount of all covered benefits under the Policy;

3. Costs, expert witness fees, and attorneys' fees per statute incurred in prosecuting its claims;

4. Pre- and post-judgment interest; and

5. For such other and further relief as this Court may deem just.

### JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted this 20th day of February 2018.

**Exhibit A1**

FURTADO LAW PC

*/s/ Nathanael Archuleta*
Nathanael Archuleta, No. 50075
David J. Furtado, No. 28002
John Joyner, No. 50005
Furtado Law PC
3773 Cherry Creek North Drive, Ste. 575
Denver, CO 80209
Telephone: (303) 755-2929
Email: nathanael@furtadolaw.com
david@furtadolaw.com
john@furtadolaw.com
Attorneys for Plaintiff

**Exhibit A1**